UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| In re | |
|---|---|
| **AZNOE AGRIBIZ, INC**, | Case No.  **09-60528-12** |
| Debtor. | |

**MEMORANDUM   OF   DECISION**

At Butte in said District this 24th day of September, 2009.

In this Chapter 12 case, on August 12, 2009, the Debtor Aznoe Agribiz, Inc. (hereinafter "Aznoe" or "Debtor") filed an Objection (Docket No. 59) to Proof of Claim No. 9 filed by Kernaghans Service, Inc. ("KSI") on the grounds KSI perfected its statutory agricultural lien post-petition in violation of the automatic stay, 11 U.S.C. § 362(a), and that its lien is voidable under 11 U.S.C. § 546(b), 11 U.S.C. § 545, and 11 U.S.C. § 549.  KSI filed a response contending that its post-petition perfection of its secured claim did not violate the stay by operation of § 362(b)(3), that it was entitled to perfect its lien post-petition under § 546(b)(1)(A) and is not voidable.  The parties agreed to submit the Debtor's Objection on stipulated facts and briefs, which have been filed and reviewed by the Court together with applicable law.  This matter is ready for decision.  This memorandum contains the Court's findings of fact and conclusions of law.

This Court has jurisdiction in this Chapter 12 case under 28 U.S.C. § 1334(a).  Debtor's Objection to KSI's secured claim is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K) to determine the validity of the lien securing KSI's Proof of Claim 9.  For the reasons set forth

1

below the Debtor's Objection to KSI's Proof of Claim No. 9 will be overruled by separate Order.

**FACTS**

The parties stipulated to the following facts:

1. By agreement with Aznoe, KSI supplied herbicides and fertilizers pre-petition for Aznoe's winter wheat crop that Aznoe planted pre-petition in the Fall of 2008 and that Debtor is, or will be, harvesting post-petition in 2009.

2. As shown by KSI's original Proof of Claim 9, KSI's first sale or application was on or about September 19, 2008, and further sales or applications occurred at various pre-petition dates recited in Claim 9 up until December 3, 2008. After Debtor's bankruptcy filing[1] KSI made sales and application of fertilizers and herbicides through at least May 19, 2009.

3. KSI filed statutory agricultural liens with the Montana Secretary of State in June, 2009, asserting agricultural liens for the herbicides and fertilizer for pre-petition and post-petition sales or application of fertilizer and herbicides bearing the filing numbers recited on the attachments to its proof of claim filed August 1, 2009, as Claim 9[2] in this Chapter 12 case. KSI purported to perfect its statutory liens under MONT. CODE ANN. § 71-3-901, *et seq*. KSI asserted it may perfect a statutory lien post-petition for its pre-petition sales and applications of herbicides and fertilizer. Debtor asserts that such post-petition perfection for pre-petition sales and applications is not permitted; Debtor did not consent to KSI's filing of those liens.

4. Copies of the Montana UCC Filing Acknowledgments for liens filed by KSI were

---

[1] Aznoe filed its Chapter 12 petition on April 6, 2009.

[2] Claim 9 asserts a secured claim in the amount of $171,931.20 and an unsecured nonpriority claim in the amount of $30,747.79.

attached as Exhibit ("Ex.") "A" to Docket No. 61.

## DISCUSSION

Debtor filed its Objection to KSI's Proof of Claim 9 on August 12, 2009. The law on objections and allowance of claims is well settled in the Ninth Circuit and this Court. This Court discussed the applicable law governing the burden of proof for allowance of claims in *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):
>
> > A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.
> >
> > Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.
>
> * * * *
>
> "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to

> prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

*See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

The analysis under *Lundell v. Anchor Const. Specialists* was reiterated by the Ninth Circuit in *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002). Applying this analysis to the instant case, KSI's Proof of Claim 9 is given *prima facie* effect of the validity and amount by Rule 3001(f) because it include attachments detailing the fertilizers and chemicals sold, dates, and the applicable statutes based on which it asserts a secured claim. KSI's Proof of Claim 9 is entitled to *prima facie* treatment under Rule 3001(f), and the burden of proof to overcome the *prima facie* effect of Rule 3001(f) on Proof of Claim 9 is on the Debtor. *Lundell*, 223 F.3d at 1039 (quoting *Holm*); *Eiesland*, 19 Mont. B.R. at 208-09.

**§ 362 – Automatic Stay.**

Debtor argues that KSI violated the stay when it filed its agricultural liens after the petition date because the liens were not created until perfection, and § 362(a)(4) prevents creditors from creating, perfecting or enforcing any lien against the debtor.

4

> Under 11 U.S.C. § 362(a), "[a] bankruptcy filing imposes an automatic stay of all litigation against the debtor." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990) (citing 11 U.S.C. § 362(a)), except in those cases specifically enumerated in § 362(b). The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives debtors a breathing spell from creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits debtors to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove them into bankruptcy. S.Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5840-41.

*In re Mittlestadt*, 20 Mont. B.R. 46, 51 (Bankr. D. Mont. 2002), quoting *In re Westco Energy, Inc.*, 18 Mont. B.R. 199, 211-12 (Bankr. D. Mont. 2000).

Actions taken in violation of the automatic stay are void, not merely voidable. *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 175 (9th Cir. BAP 2005); *In re Gruntz*, 202 F.3d 1074, 1082 (9th Cir. 2000); *40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076, 1082 (9th Cir. 2003); *Schwartz v. United States*, 954 F.2d 569, 570-71, 575 (9th Cir.1992); *In re Deines*, 17 Mont. B.R. 114, 115 (Bankr. D. Mont. 1998); *Hillis Motors, Inc. v. Hawaii Auto Dealers' Assoc.*, 997 F.2d 581, 586 (9th Cir. 1993). Thus, if KSI's perfection of its agricultural liens was done in violation of the stay, the perfection was void *ab initio*.

Section 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate." However, under 362(b)(3) the filing of a petition does not operate as a stay "of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title . . . ." *In re Baldwin Builders*, 232 B.R. 406, 410 (9th Cir. BAP 1999). Exceptions to the stay must be narrowly construed to further the purpose of the stay. *Baldwin*, 232 B.R. at 412, citing *In re Glasply Marine Industries, Inc.*, 971 F.3d 391, 394-95 (9th Cir. 1992). On the other hand,

5

"we are to follow the statutes as they are written." *Baldwin*, 232 B.R. at 411. When the language of a statute is plain, the sole function of the courts is to enforce it according to its terms unless the disposition required by the text is absurd. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))). The language of the exception in § 362(b)(3) is plain and unambiguous in excepting from the stay of § 362(a) "any act to perfect" an interest in property. "[A]ny act to perfect" means *any* act, whether it both creates and perfects a lien or simply perfects the lien. Debtor's argument that KSI's filings both created and perfected its agricultural liens and so do not qualify for the exception under § 362(b)(3) would limit the language of that statute where Congress drafted it to except "any act to perfect." Courts "cannot limit legislation by cavalierly conjuring up qualifications that the legislature has either eschewed or neglected to consider." *In re 229 Main Street Ltd. Partnership*, 262 F.3d 1, 10 (1st Cir. 2001), citing *Brogan v. United States*, 522 U.S. 398, 408, 118 S.Ct. 805, 139 L.Ed.2d 830 (1998). The Court considers Debtor's contention that KSI's lien was created by the post-petition filing of the liens and is stayed by § 362(a)(4) as contrary to § 362(a)(4)'s plain terms.

    Debtor argues that KSI's agricultural liens do not relate back under Montana law to before the date of the filing of the petition, so KSI violated the stay when it filed the agricultural lien statements post-petition, citing this Court's decision *In re Brittian*, 106 B.R. 665 (Bankr. D. Mont. 1989). *Brittian* involved a construction lien, and Debtor argues that the construction lien

could not be avoided because it related back under Montana law to when construction began. Debtor is correct that the construction lien in *Brittian* attached at the commencement of the work under § 71-3-535(5), and that the lien must be filed before the construction lien attached under § 71-3-542(2). *Brittian*, 106 B.R. at 666. The construction lien statutes construed in *Brittian* simply do not apply, however, to agricultural liens in Montana. In *Stockman Bank of Mon. v. Mon-Kota, Inc.*, 2008 MT 74, ¶ 27, 342 Mont. 115, 238, 180 P.3d 1125, the Montana Supreme Court wrote that "agricultural liens attach according to the particular rules in the statue that creates them." (Quoting 40 Tex. Bus. L. At 14).

This Court summarized *Brittian* in *In re Halprin*, 16 Mont. B.R. 93, 94-95 (Bankr. D. Mont. 1997). After noting that post-petition action to perfect a construction lien in Montana under § 71-3-535(5) relates back to the commencement of work, which in *Brittian* occurred pre-petition, the Court noted: "Furthermore, explicit in the Court's holding in *Brittian*, and logically indispensable to its application, is the proposition that filing a construction lien post-petition on secured claims arising prepetition, which attachment relates back under state law to the commencement of work, does not violate the automatic stay." *Halpin*, 16 Mont. B.R. at 95.

Priority of construction liens as against claims other than construction lien claims is provided at § 71-3-542, which takes construction liens outside of the general provision governing priority of liens at § 71-3-113: "Other things being equal, different liens upon the same property have priority according to the time of their creation." Agricultural liens likewise have their own special priority statute, § 71-3-904, which gives agricultural liens a superpriority[3] status "which is

---

[3] Section 71-3-904 provides: The lien for labor or services performed or material furnished as specified in this part shall be prior to and have precedence over any mortgage, encumbrance, or other lien upon said grain or crops, except the lien for seed, hail insurance,

not dependent upon being the first to file." *Mon-Kota,* 2008 MT 74, ¶ 29.

A leading commentator explains:

Section 362(b)(3) of the Bankruptcy Code states, in relevant part, that the filing of a bankruptcy petition does not stay "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) . . . ." Accordingly, postpetition perfection and maintenance or continuation of perfection authorized under section 546(b) do not violate the automatic stay, and this perfection and maintenance or continuation of perfection may be accomplished without obtaining relief from the stay.

5 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 546.03[5] (15th ed. 2007).

KSI argues that if it proceeded pursuant to "generally applicable law" which satisfies § 546(b) then its perfection of its agricultural liens post-petition did not violate the stay. The Debtor makes circular arguments that the filing of the agricultural liens violated the stay under § 362(a), so it cannot be perfected under § 546(b), but the § 362 issue cannot be determined until first determining whether § 546(b) applies.

**§ 546(b).**

Section 546(b) provides:

(1) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that –
    (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
    (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.
(2) If –
    (A) a law described in paragraph (1) requires seizure of such

---

threshing, labor, and warehouse services furnished for the purpose of growing or handling the particular grain or crops."

>    property or commencement of an action to accomplish such
>    perfection, or maintenance or continuation of perfection of an
>    interest in property; and
>    (B) such property has not been seized or such an action has not
>    been commenced before the date of the filing of the petition;
> such interest in such property shall be perfected, or perfection of such interest
> shall be maintained or continued, by giving notice within the time fixed by such
> law for such seizure or such commencement.

Section 546(b) was construed by the Ninth Circuit in *In re Hunters Run Ltd. Partnership*, 875 F.2d 1425, 1428 (9th Cir. 1989):

> This section allows creditors with certain types of liens to avoid the potential prejudice of section 362's automatic stay by allowing for post-bankruptcy-petition perfection of those liens. *In re Electric City, Inc.*, 43 B.R. 336, 340 (Bankr. W.D. Wash. 1984). Thus, as Hand points out, if Hand had not recorded his lien under RCW 60.06.060 *before* the bankruptcy petition was filed, then in spite of section 362(a)(4)'s language staying *perfection* of liens he could have filed notice of his lien with the bankruptcy court *after* the petition was filed because section 546(b) permits him to do so.

(Emphasis in original).

Section 546(b) was amended in 1994, but this Court noted in *Halpin* that the 1994 amendments to 546 "make no changes to the pertinent substance of the statute and therefore have no effect on the foregoing." 16 Mont. B.R. at 95.

KSI argues that the Montana statutes governing its agricultural liens are "generally applicable law" within § 546(b)(1), which Debtor does not dispute. A "generally applicable law" is a law that must apply to cases within and without the bankruptcy sphere. *229 Main Street*, 262 F.3d at 10; *Makoroff v. City of Lockport*, 916 F.2d 890, 892 (3d Cir. 1990). The construction lien statues in § 71-3-901, *et seq.,* qualify as generally applicable law.

Debtor argues that KSI's lien does not relate back under § 71-3-901 as explicitly required for § 546(b) protection, and the lien did not attach until perfection by filing post-petition. Debtor

9

cites *Brittian* for the proposition that a lien creating statute must explicitly relate back pre-petition, not just grant a superpriority, in order to qualify for § 546(b) protection. Debtor argues that the lien under § 71-3-901 does not relate back, and does not attach upon execution of a security agreement but rather according to the statute creating the lien.

Debtor argues that the agricultural lien never attaches until it is perfected, and prior to perfection the creditor does not have any rights in the collateral that are enforceable. Debtor's argument presumes that the same rules for attachment and perfection apply to agricultural liens as those which apply to security interests. However, the Montana Supreme Court wrote that "critical" to an accurate reading of the agricultural lien provision of Montana's Revised Article 9 "is an understanding that *agricultural liens are not security interests.*" *Mon-Kota*, ¶ 26 (emphasis in original). An agricultural lien is "an interest, *other than a security interest*, in farm products ...." *Id.*, quoting § 30-9A-102(1)(e) (emphasis in original). The Montana Supreme Court noted that the attachment rules in Revised Article 9 governing security interests are not applicable to agricultural liens, which attach according to the particular rules in the statute that creates them. *Mon-Kota*, ¶ 27.

Debtor cites *In re Kurth Ranch*, 110 B.R. 501 (Bankr. D. Mont. 1990) as support for the line of authority that § 546(b) applies only to post-petition perfection where state law allows the perfection to relate back pre-petition. *Kurth Ranch* involved leasehold interests and rents, which the Court determined were not subject to the provisions of the Montana UCC Article 9. 110 B.R. at 505. The creditor in *Kurth Ranch* had to perfect a security interest in rents under Montana law by the appointment of a receiver, and under § 546(b) had to perfect the security interest in rents by notice that the creditor intended to enforce its lien in rents pursuant to what is now §

10

546(b)(2). 110 B.R. at 505-06.

Debtor argues that *Brittian* and *Kurth Ranch* require that the lien priority date relate back to a pre-petition date to qualify under § 546(b)(1)(A), and that KSI's superpriority agricultural liens do not have a retroactive relation back in time so violate the stay, and under the doctrine of *stare decisis* this Court must follow *Brittian* and *Kurth Ranch* and find that KSI's liens violated the stay because they do not relate back or have retroactive effect. KSI argues that *Brittian* and *Kurth Ranch* involved lien statutes which are not similar to the agricultural lien statutes in the instant case. The Court agrees.

The Court notes that the words "relates back" are not found in § 71-3-535(5), which is the statute upon which the Court based its decision in *Brittian*. The instant case does not involve leases, rents, mechanic's liens or security interests, and therefore is distinguishable from *Brittian* and *Kurth Ranch* because the Montana Supreme Court has deemed it critical to understand that agricultural liens are not security interests and "attach according to the particular rules that creates them." *Mon-Kota*, ¶ 27. Given that distinction the relation back requirement for security interests in rents (*Kurth Ranch*) simply does not apply, and neither does the relation back requirement for construction liens under § 71-3-535(5) which formed the basis for this Court's *Brittian* decision and the decision involving a similar mechanic's lien in *In re North Side Lumber Co.*, 59 B.R. 917, 921 (Bankr. D. Or. 1986).

Debtor argues that § 546(b) is ambiguous and requires reference to the legislative history, citing *Peltz v. Wisc. Dept. of Workforce Dev.*, 283 B.R. 259 (E.D. Wisc. 2002). The district court in *Peltz* found ambiguity in the two interpretations § 546(b) would have, depending on whether the phrase "before the date of perfection" modifies the language immediately preceding it, "any

11

[sic][4] entity that acquires rights in such property", or whether it modifies the beginning phrase of § 546(b)(1), "permits perfection of an interest in property to be effective[.]" Debtor argues that *Peltz* held that case authority and legislative authority require relation back as a required element of § 546(b), and that a lien given superpriority status is treated as perfected on the day it is actually perfected. *Peltz*, 283 B.R. at 264.

The district court's decision in *Peltz* was reversed in *In re AR Accessories Group, Inc.*, 345 F.3d 454 (7th Cir. 2002), *cert. denied sub nom.*, *Bank One, N.A. v. Wisconsin Dep't of Workforce Development*, 541 U.S. 959, 124 S.Ct. 1715, 158 L.Ed.2d 400 (2004). Regarding the finding of ambiguity in the language of § 546(b)(1), the Seventh Circuit's decision reversing *Peltz* specifically stated: "We find no such ambiguity in the text of the statute." 345 F.3d at 458. The court found that § 546(b)(1)(A) unambiguously expresses that the phrase "before the date of perfection" modifies the language which it follows, and rejected the district court's interpretation. 345 F.3d at 458. The court held that "a priming statute need not contain language expressly providing for retroactive perfection in order to trigger the exception provided in 11 U.S.C. § 546(b)(1)(A) to the automatic stay of postpetition efforts to perfect a property interest." 345 F.3d at 458.

The Debtor argues that *AR Accessories* ignores Congress' intent and does not reflect this Court's decisions or the Ninth Circuit. However, the district court's reasoning in *Peltz* is not good law in its own district, or in the Seventh Circuit. In the Ninth Circuit § 546(b) was not found to be ambiguous in *Hunters Run*, 875 F.2d at 1428. Neither did this Court find § 546(b)

---

[4]The district court misquoted § 546(b)(1)(A). The quoted word "any" in *Peltz*, 283 B.R. at 263 is not found in § 546(b)(1)(A). The correct phrase is "against *an* entity that acquires rights in such property ...."

ambiguous in *Brittian* or *Kurth Ranch*. Since the statute is not ambiguous it is not necessary to examine the legislative history as the district court did in *Peltz*. This Court declines to follow its reasoning.

Debtor argues that KSI's agricultural lien "only received a limited superpriority" because it did not relate back to a prepetition date and so may not be perfected. KSI argues that to require that the lien relate back violates the rule of statutory construction when the language of the statue is plain, and would encourage redundancy. Section 546(b)(1)(A) does not contain language requiring that the interest relate back under applicable law, but rather provides that the law "permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection[.]"

Hon. Jim D. Pappas construed agricultural liens arising under Idaho statutes in *In re TNT Farms*, 226 B.R. 436 (Bankr. D. Idaho 1998). Judge Pappas wrote:

> As to the pre-petition shipments, Kunz has a valid perfected seed lien in the 1997 crop proceeds. Although Kunz perfected the lien post-petition, "[i]n bankruptcy, after the petition is filed, a statutory lien claimant who has failed to perfect its pre-petition liens takes priority over the trustee [and others] if the lien is later properly and timely filed." *In re Fielding*, 89 I.B.C.R. 31, 36. This rule is embodied in the operation of Sections 362(b)(3) and 546(b) of the Bankruptcy Code. Section 546 protects the unperfected statutory lien claimant against the hypothetical lien creditor status the bankruptcy trustee gains at the commencement of a bankruptcy case by allowing the claimant the opportunity to perfect its security interest post-petition, so long as such perfection is still within the statutory time periods for perfection. Section 362(b)(3) provides an exception to the automatic stay for parties holding statutory liens that can not be avoided under Section 546. For this reason, Kunz has a valid, priority seed lien only as to the shipments occurring before TNT filed for bankruptcy.

226 B.R. at 445.

The seed lien in *TNT* attached and was deemed perfected upon filing of a notice of claim

of lien with the secretary of state under Idaho Code § 45-307(1). 226 B.R. at 444. Judge Pappas gave priority to the seed lien which was perfected post-petition within the statutory period under § 546(b). 226 B.R. at 445. Debtor criticizes the decision in *TNT Farms* and argues that *TNT* does not apply to the instant case, and that the court stretched its holding to support its conclusion that the pre-petition delivery of seed potatoes qualified for § 546(b) protection. Debtor contends that the opinion in *TNT Farms* did not address the lack of a relation back provision in the Idaho statute, and that the instant case presents different legal issues.

KSI's agricultural liens are based in part on Part 9 of Title 71, MCA. The relevant statutes are:

> 71-3-901 **Who may have lien – amount**. A person, firm, corporation, or partnership that under contract, express or implied, performs labor or services or furnishes material in crop dusting or spraying grains or crops, whether by aerial or ground application, for the purpose of fertilization or weed, disease, or insect control for promoting the growth of the grains or crops *has a lien* upon all grains or crops dusted or sprayed for and on account of the labor or service performed and material furnished, upon complying with the provisions of this part. A lien may not exceed the prevailing price charged in the particular locality in which the grain or crops are sprayed or dusted.

(Emphasis added).

The stipulated facts state that KSI provided chemicals or fertilizer to the Debtor pre- and post-petition. Thus, under § 71-3-901 KSI "has a lien" upon all Debtor's crops dusted or sprayed with KSI's chemicals and fertilizers, upon complying with the provisions of Part 9. The Montana Supreme Court in *Mon-Kota* noted that, in addition to the priority created under Montana's agricultural lien statutes at Part 9, an agricultural lien is perfected if it has become effective and all of the applicable requirements for perfection under the Montana's Revised Article 9, § 30-9A-310, MCA, have been satisfied. *Mon-Kota*, ¶ 30, quoting § 30-9A-308(2). In

other words agricultural liens have "one foot in Article 9 and one foot out of it", and the absolute priority of an agricultural lien over any other security interest depends on satisfying the perfection requirements of § 30-9A-310. *Mon-Kota*, ¶¶ 26, 30. "[B]y doing so they will be insulated from Revised Article 9's 'first in time' rule and retain the 'superpriority' status of their liens. *Id.*, ¶ 33.

The requirements for obtaining an agricultural lien are provided at § 71-3-902:

> **71-3-902. How lien obtained.** (1) A person, firm, corporation, or partnership that is entitled to a lien under this part shall, within 90 days after the last labor or service was performed or material furnished in crop dusting or spraying or crops, file in the office of the secretary of state a statement of agricultural lien as provided in 71-3-125.
> (2) A person, firm, corporation, or partnership that is entitled to a lien and that intends to file a lien under this part shall give notice, by certified mail, of intent to file to the person, firm, corporation, or partnership for which labor or service was performed or materials furnished.

The stipulated facts do not include any facts which show that KSI failed to comply with the requirements of § 71-3-902 or § 71-3-125 for filing or giving notice. The lack of any facts weighs against the Debtor as the objecting party to overcome the prima facie evidence of KSI's Claim 9. The Montana Supreme Court in *Mon-Kota* concluded that the filing of an agricultural lien statement under § 71-3-125 satisfied § 71-3-902, and that in addition it satisfied the financing statement requirements of Revised Article 9 without the need for a duplicative filing. *Mon-Kota*, ¶ 42.

The superpriority of agricultural liens in Part 9 is provided at § 71-3-904:

> **71-3-904. Priority.** The lien for labor or services performed or material furnished as specified in this part shall be prior to and have precedence over any mortgage, encumbrance, or other lien upon said grain or crops, except the lien for seed, hail insurance, threshing, labor, and warehouse services furnished for the purpose of growing or handling the particular grain or crops.

In addition, the Montana Supreme Court wrote in *Mon-Kota* that an agricultural lien perfected under Title 71 must also satisfy the requirements of Revised Article 9, § 30-9A-310, to obtain priority over security interests established under the UCC. *Mon-Kota*, ¶¶ 30, 33. "[B]y doing so they will be insulated from Revised Article 9's 'first in time' rule and retain the "superpriority' status of their liens." *Id*., ¶ 33. KSI argues that § 71-3-904 easily meets the requirement of § 546(b)(1)(A) that its interest in the crop be effective against an entity that acquires rights in the property before the date of perfection, and that its agricultural lien has a superpriority. The foregoing language from the Montana Supreme Court in *Mon-Kota* provides support for KSI's contention, because under that generally applicable Montana law KSI's agricultural liens are effective against an entity that acquires rights in such property before the date of perfection by virtue of the superpriority, not based on the first in time rule.

Debtor argues that under the agricultural lien statutes the filing creates, attaches and perfects the lien all at once, and before the filing KSI was only a person entitled to a lien. Because of the automatic stay, Debtor argues, KSI's right to attach a lien was not an interest in property, but rather only a cause of action personal to KSI, and KSI violated the stay when it filed its notice of agricultural lien. KSI contends that it acquired an "interest in property" in Debtor's winter wheat crop based on the stipulated facts that it sold and applied the fertilizer and chemicals pre-petition, and that "interest in property" as used in § 362(b)(3) is unequivalent to and broader than the term "lien." *229 Main Street*, 262 F.3d at 6, 7.

In the instant case KSI filed statements of its agricultural liens within the 90 days provided under § 71-3-902, and since they were perfected within the statutory time limits for perfection they were excepted from the stay under § 362(b)(3) which provides that the filing of a

16

petition does not operate as a stay under § 362(a) "of any act to perfect . . . an interest in property . . . ." "Property" of the estate is broadly defined at 11 U.S.C. § 541(a)(1) to include all legal or equitable interests of the debtor in property as of the commencement of the case, and the estate includes product or profits of or from property of the estate under § 541(a)(6). The Court finds no merit in Debtor's contention that KSI's inchoate right to an agricultural lien under § 71-3-901, *et seq.*, before it filed the agricultural lien statements, was only a personal cause of action and not an "interest" for purposes of § 546(b)(1)(A). The Montana Supreme Court in *Mon-Kota* noted that an agricultural lien is "an interest, other than a security interest, in farm products ...." *Mon-Kota*, ¶ 25, quoting § 30-9A-102(1)(e), MCA.

Debtor cites *Glasply Marine*, 971 F.2d at 395 as binding authority for the proposition that KSI did not have a perfectible interest when it filed its notices of agricultural lien. Debtor argues: "If a lien creditor must take several steps to perfect its lien, the lien holder does not have a 'perfectible interest.' *In re Glasply Marine Indus., Inc.*, 971 F.2d 391, 395 (9th Cir. 1992)."[5] *Glasply Marine* does not state any such proposition at 971 F.2d at 395, and provides no support for Debtor's contention. The closest it comes is: "Washington law requires several affirmative acts to determine the property tax and attach a lien. Snohomish County cannot establish that the [post-petition] 1988 and 1989 taxes constitute an exception to the automatic stay." *Id.,* 971 F.2d at 395. KSI rightly points out that under Debtor's interpretation of *Glasply Marine* the debtor in *Brittian* would have been prevented from taking the steps for perfection of its construction lien.

The Ninth Circuit in *Glasply Marine* rejected the county's argument that its grant of

---

[5]The quoted language is from the middle of page 5 of Debtor's Answer Brief, Docket No. 67.

17

taxation under Washington law constituted an "ever-present" interest in real property that triggered § 546(b)'s automatic stay exclusion for post-petition property taxes. 971 F.2d at 395-96. *Glasply Marine* does not provide any support for the Debtor's contention or Objection. On the contrary, the Ninth Circuit wrote: "If a creditor possesses a pre-petition interest in property, however, and state law establishes a time period for perfection of a lien based on that interest, the creditor may still perfect the lien post-petition. *See* 11 U.S.C. §§ 362(b)(3) and 546(b)." *Glasply Marine*, 971 F.2d at 394. KSI's interest in the Debtor's crop was created pre-petition when it provided fertilizer, chemicals and services, so under *Glasply Marine* it may perfect its lien post-petition.

Because KSI's lien was created after the automatic stay, Debtor argues that § 362(b)(3) does not except the perfection of that lien and § 546(b)(1) does not protect KSI's lien. *North Side Lumber*, 59 B.R. at 921. KSI cites *229 Main Street* as support for its argument that because the Debtor was indebted to KSI prior to the bankruptcy KSI had an interest in the Debtor's property under § 362(b)(3) and the right to perfect its interest, and the "simultaneous postpetition creation and perfection of a lien may come within the pertinent exception to the automatic stay." 262 F.3d at 9. Based on the statutory scheme under applicable Montana law, as explained in detail by the Montana Supreme Court in *Mon-Kota*, the Court agrees with KSI that § 546(b)(1)(A) applies to KSI's agricultural liens, and therefore § 362(b)(3) excepts KSI's perfection of its agricultural liens from the stay under § 362(a), including the stay of an act to create a lien of § 362(a)(4) or (a)(5).

Finally, the Court notes that Debtor's Chapter 12 Plan (Docket No. 29), which is set for confirmation on October 23, 2009, makes no provision at paragraph 2(b) for KSI's secured claim

18

in Claim 9, which as a result of this Memorandum of Decision, will be allowed and Debtor's Objection to Claim 9 is overruled. It will be necessary for the Debtor to file an Amended Chapter 12 Plan providing for KSI's allowed secured claim in order to go forward with the hearing on confirmation.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction in this Chapter 12 case under 28 U.S.C. § 1334(a).

2. Debtor's Objection to KSI's secured claim is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (K).

3. Debtor has the initial burden of proof to overcome the *prima facie* effect of KSI's Claim 9 under F.R.B.P. Rule 3001(f). *Lundell*, 223 F.3d at 1039 (quoting *Holm*); *Eiesland*, 19 Mont. B.R. at 208-09.

4. Subsection 362(a) of the Bankruptcy Code does not operate as a stay of any act to perfect, maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under § 546(b). § 362(b)(3).

5. Agricultural liens are not "security interests" under Montana law, and therefore Article 9 attachment rules are not applicable to agricultural liens. Instead, agricultural liens attach according to the particular rules in the statute that creates them. *Mon-Kota*, 2008 MT 74, ¶ 27.

6. Part 9 of Title 70, chapter 3, MCA, sets forth generally applicable law in Montana that permits perfection of agricultural liens in such property to be effective against an entity that acquires rights in such property before the date of perfection. § 546(b)(1)(A).

7. KSI satisfied the requirements of Part 9 for obtaining superpriority agricultural liens in the Debtor's winter wheat crop.

8.  Debtor failed to satisfy its burden of proof to show that KSI's secured claim should not be allowed.

**IT IS ORDERED** that a separate Order shall be entered in conformity with the above overruling Debtor's Objection (Docket No. 59) to Proof of Claim No. 9; and granting the Debtor ten days to file an Amended Chapter 12 Plan providing for KSI's allowed secured claim.

BY THE COURT

*/s/ Ralph B Kirscher*
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana